1734-85 Teresa Barry v. James P. O'Grady Arguments Not to Exceed 15 Minutes Preside Ms. Lloyd for the appellant. Good morning, Your Honors. I'd like to reserve three minutes for rebuttal. Plaintiff worked with Defendant Judge O'Grady from December 2011 to May 2013, approximately 16 months. The specific allegations that she offers concerning her environment in this time fails to suffice to support a 14th Amendment equal protection claim against O'Grady because she fails to equal treatment of her based on her gender and fails to demonstrate that she was subjected to severe or pervasive intentional discrimination based on her gender. Her allegations fail to defeat Defendant O'Grady's qualified immunity. Looking at the material factual allegations that plaintiff has offered, it's apparent that her sexually hostile environment claim is not based on any interaction between the O'Grady, she was not the object or the target of any alleged harassment. The gist of her claim is that she was offended by comments that she overheard or laughter that she overheard, much of which, as she alleges, was between Judge O'Grady and two female bailiffs in Chambers. As far as the overall assessment of her environment, she testified as to these 16 months, she testified for the approximate first 12 months up until November 14th, 2012, she and Judge O'Grady were fine. Those are her words and in the brief we gave numerous citations for that allegation. She offers her allegation as to a conversation she overheard on November 14th, 2012, which according to her involved Judge O'Grady's female bailiff offering in conversation with another female bailiff, Judge Peoples, who shared Chambers with Judge O'Grady, with Judge Peoples' female bailiff and Judge O'Grady offering an account of a sexual relationship that was going on between a female attorney and two male attorneys. Frank's comments were graphic, were explicit as to some of this sexual activity that the In the course of this laughter, Judge O'Grady made the comment, she must be good at what she does. According to, we have this particular conversation. This place where you're starting, I mean, why is this not a tribal issue of fact? I mean, you're raising some stuff, you know, there are all these statements, you say she overheard them, that also means he was saying it where she could hear it, which is relevant and seems to me, I don't know, a funny place for you to, I'm a little surprised this is how you're starting your argument. Your Honor, I'm starting there because I think it's important to assess in the 16 months, what is she alleging both to demonstrate that it is Judge O'Grady who individually and intentionally engaged in sex discrimination, that is unequal treatment of her, and what is she alleging to support her allegation that the intentional discriminatory conduct he engaged in was severe and pervasive? Well, it could be pervasive starting at a particular time. In other words, maybe he was behaving the first 12 months and then all of a sudden, there starts to be a sexually hostile work environment. I would grant that as a logical possibility, Your Honor, but that's why I wanted to say in this case, she's alleging for the approximate first 12 months, things are fine. She alleges a conversation that occurred on this day. And then what does she allege occurred after that day? According to her, Judge O'Grady's conduct towards her after that day was hostile. But she doesn't offer any allegations of any intentional gender discrimination. To the contrary, she says that after that day, and again, I'm sure Your Honors have already read the record. We know that after the conversation that day, she went home and did a Facebook post to the attorney that was being talked about and also a Facebook post that went out more generally saying that, criticizing the female bailiffs and using some inappropriate language in calling them words that she should not have used, attributing this whole conversation on the 14th to jealousy on the part of the plaintiffs. After that day, she says, Judge O'Grady was aware she had spoken to the female bailiff. And from that time forward, she says he treated, after she got back from an extended leave, she says that he was hostile to her and demonstrated the hostility by scrutinizing her work more carefully. Ms. Lloyd, let me interrupt you just a minute. You're looking at facts. We're here to review only, and I would ask you to formulate this, a neat, abstract issue of law. We can't, in order to maintain an appeal, an interlocutory appeal, you have to accept the facts as she lays them out. So what is the neat issue of law that you wish us to? Review, and what is the ruling you wish us to make, legal ruling? Your Honor, what I seek is that this Court follow what I believe is the longstanding precedent of the Sixth Circuit, which has a longstanding course of reviewing cases of sexually hostile environment to determine whether or not the total of the material factual allegations are sufficient to satisfy the standard, which is a relatively high bar, for a sexually hostile environment. I'm mentioning the facts as she alleged them because our argument is, as a matter of law, the totality of her material factual allegations are insufficient to meet that high bar, both for a severe and pervasive hostile environment, and also the totality of these factual allegations, which I would discuss, because for purposes of summary judgment, we are accepting them, we're not disputing them, they are insufficient. They do not show anti-female animus, or gender animus, on the part of Judge O'Grady. So those are the issues of law. I think the trial judge found that there were some material disputes of fact that kept him from, that meant the case needed to go to the jury. What, where are the errors there? Your Honor, I think there were errors, and we do not dispute, as I said, the facts as alleged by plaintiffs. What we dispute is that the trial judge misapplied the law in this case. In this case, the fact that there was a conversation among the female plaintiffs that involved a discussion of sex, or a sexual act, is not evidence to support anti-female animus on the part of Judge O'Grady. The, moreover, the conversation among the female bailiffs is not unconstitutional conduct. Beyond that, Your Honor, the point I do want to make, and I think we've also- Can I make a suggestion, maybe as a way to answer Judge Daughtry's question, which would also be helpful to me? Okay. Is, she's making the point it's a legal question, and your response as well, the totality of these circumstances does not suffice for a cognizable hostile work environment claim. The way to prove that's a legal point, and you really are accepting all the facts as alleged and supported by the plaintiffs, is to say, well, if there's this Sixth Circuit case, or this U.S. Supreme Court case, which had worse facts, and that court ruled as a matter of law, it was not a cognizable hostile work environment. So, do you have a case where you can say, I've accepted these facts, and another case where the defendant won was worse? Your Honor, we do have cases, and one of the cases that I think, which also includes a litany of cases, this Court's recent affirmance, Graves, this Court's affirmance in the Graves case, we had cited the District Court case, but the affirmance of summary judgment for the defendant in that case as well, lists cases where, and again, there's several cases, where this Court affirmed summary judgment on cases with far more severe facts here. This, as a matter of law, and we are, this case doesn't involve any touching of plaintiff, any implicit or explicit request for sexual activity. That's not required. Pardon me? That's not required. No, Your Honor, but something is required. What I'm saying is this case, this case is about words, but there's nothing in these words that supports an anti-female animus. And this is a 14th Amendment case, not a Title 17. Graves is the case, if we look at it, Graves will look at it, and you'll say those facts were worse, and the defendant still won as a matter of law. Your Honor, in our brief, we have a litany of cases with facts that won. I know, that's why I'm asking the question. Do you really? Graves cites those cases, too. I can look at your cases and get angrier and angrier each time I realize it's not this case. So you're, I'm giving you a chance to say. We have other cases. Your Honor, we've got, you could look at Wade versus Automation Personnel Services. You could look at Daniels versus Pike County Commissioners. You could look at Williams versus GMC. I mean, there are several cases that indicate what you have, you have to have this element of intentional gender discrimination. As a matter of law, with the 14th Amendment, plaintiff has to show that but for her gender, she would not have experienced the treatment of which she complains. None of the allegations that she makes are evidence in support of that. For example, what does she say about Judge O'Grady? Other than this isolated conversation on November 12th. After that, none of the allegations that she makes about him fit the description of conduct that is motivated by gender animus. She concedes that it is not his conduct towards her after that, is that he's hostile towards her because she spoke with the female attorney. The types, what she is basing this on, and if you look through specifically, she has required both for qualified immunity and for 14th Amendment purposes to make her allegations specific. What does she say? Well, according to her, he used the F word all the time. Even the district court recognized the use of the F word had no sexual connotation the way that she alleged to use it whatsoever. It wouldn't matter how many times he used that word where it didn't evince any anti-female animus. It's not material to her claim, her 14th Amendment claim against Judge O'Grady. I could, which we did in our brief, but I could go through her other factual allegations as well. This is all that she has. The red light is on, so if you want to save your time for rebuttal, you may. I also wanted to just briefly say that the district court also aired in its analysis of the First Amendment claim. The evidence that was offered by defendants was uncontradicted. Judge O'Grady could not possibly have retaliated against the plaintiff on the basis of the First Amendment, because her First Amendment speech didn't occur until May 7th, 2013. And he had no involvement in her employment decisions after that date. I think my time's up, so thank you. Five years and 12 days ago, Teresa Berry was the unwilling witness to an event which both shocked and sickened her. That event was her boss, her supervisor, and two colleagues engaging in the systematic shredding of the character of another woman using such sexually explicit and demeaning terms that none of us would be willing to repeat those in this courtroom. My name is Michael Garth Moore. It's my privilege to represent Teresa Berry in defending the order below on the 64-page opinion by Judge Sargas, granting Teresa finally the right to bring her claims before a jury of her peers. Ladies, I believe this case has import beyond merely the parties. Many sexual harassment retaliation cases have limited... Should we, I mean, what's your preference? A dismissal for lack of jurisdiction under Johnson v. Jones, or reaching the merits and deciding whether the two claims present a triable issue of fact? I'm glad, Your Honor, that you brought that up, because this case can be decided on the basis of an observation that was made in the Romo case. After addressing Johnson in the concurrence, this court said district courts have more experience sifting through convoluted factual records than do courts of appeals, and that is why our qualified immunity jurisdiction is limited. And the line that followed is this. When the appeal boils down to dueling accounts of what happened, and when the defendants insist on acknowledging on appeal only their accounts, the underlying basis for the interlocutory appeal disappears. So, just to make sure you understand the point of my question, you know, I think counsel on the other side just got up and didn't insist on that, and specifically said I accept the facts as alleged and as supported by the evidence, so I don't know that that even applies. But I'm actually asking a slightly different question in terms of what's best for your client. Option A is a dismissal for lack of jurisdiction, which means we don't do anything on the merits. We're not saying word one about whether there's a triable issue of fact in either of these claims, which is good in one sense. You didn't lose, but you also didn't establish Sixth Circuit precedent. There's a triable issue of fact, which if there is a jury trial means it's almost beyond being challenged. So the tactical question I'm asking you is which do you prefer? I think, Your Honors, you can decide this on the basis of the lack of jurisdiction, but you can also take it on the merits, and I'm... I think which do you prefer does not lead to an or answer. I'm perfectly happy, and we're perfectly happy for you to accept it on the merits, and the reason I say that is this. Because my colleague just stood up and said, we accept all the factual allegations that exist. We accept the facts as the trial court accepted them. We just say the legal, there's a legal error below. Now what's wrong with that? Because they did not accept the facts. In her argument, I'm sorry, if she accepts, if she accepts them now, if you look at the decision made by Judge Sargas below, he sifted through a record of hundreds and thousands of pages and came to the conclusion that there was a triable issue of fact, both as to equal protection sexual harassment and as to First Amendment retaliation. But she focused on the sexual harassment issue, and she says as a matter of law, there was no anti-female animus, and there was no hostile, sexually hostile working environment given the cases that exist from the Sixth Circuit and the Supreme Court. So how do you attack those legal issues that she asserts prevent you from prevailing? There are the cases cited, for example, the Graves case. These cases were decided by the court on the basis of a decision on the merits after summary judgment, not on the basis of qualified immunity appeal. Now, if anything sets off a qualified immunity appeal versus a decision after the merits on summary judgment, it is that this court must accept both the facts and the inferences drawn by the trial court below. But what shows that there was a sexually hostile work environment? Well, Your Honor, it's a good point. If you look at, because again, in saying we accept these facts, in fact, they don't. If you look at Teresa Berry's testimony and her declaration, which is ECF 103, you will see that she addresses not simply that everything was fine for 12 months up until this incident, but in fact, that the statement that things were fine was an offhand comment to one question about whether or not Judge O'Grady retaliated against her. What shows that there was a sexually hostile work environment, given our cases that say it has to be pretty egregious? The work environment has to be really fairly constant, sexually hostile? And I defer to Judge Sargas' extraordinarily detailed examination of the cases. Give me an example of what happened to her or what happened in the office that you could say would show it was a sexually hostile work environment. Well, sexually hostile work environment, Your Honor, as you know, does not require that the individual be the direct object. Equal protection sexual harassment applies the Title VII standards. And so applying those... Give me an example of someone that it did affect. It did affect my client, Your Honor, repeatedly. The constant use of demeaning terms addressing women, the constant use of the F word, which my colleague says has no application, which the court felt perhaps not, but maybe so. We're talking about a constellation, not an isolation of circumstances. And that's where Your Honors have to address, as the court did, that this is a constellation of ongoing acts. The comments about women's attire. The statement about, boy, I'd like to have that if I wasn't married. And again, the cases, and Judge Sargas addressed those cases, do not require that a plaintiff who's subjected to this over a period of time is required to specify each and every allegation. Again, in her declaration at 103, Teresa Berry described the nature and could address specifics and said these were repeatedly representative comments that were made constantly. Under the case law, that falls within a definition of hostile work environment. And what case would you rely on? Oh, Your Honor. Nothing comes to mind at the moment. Again, I refer you back to Judge Sargas' recitation of those cases in his opinion. My point is, is that moreover, the cases hold that even one incident can be a severe hostile, severe environment that creates hostility in and of itself. And I submit to you that the event of November 14, 2012, was such an incident. We're talking about conduct which would not be tolerable anywhere, let alone in the chambers of an elected judge. And from that moment on, it was so intolerable. So, you know, if you're not going to give us cases to analogize to, maybe we can shift to the retaliation one. And, you know, so we know temporal proximity is something one can use that creates inferences. We're usually a little skeptical of that alone. So, Grant, there's temporal proximity for the retaliation claim in terms of causation. What would you add to temporal proximity to get you over the hurdle to show that there's a tribal issue of fact? Both circumstantial and direct evidence. Fine, just tell us. I'm going to, Your Honor. The circumstantial evidence surrounds the moment, those days that existed at September 24th and 25th, 2013. And what I mean by that is this. Judge O'Grady had recommenced in September his harassment of my client. She was in contact both by telephone and email with Emily Shaw, requesting that something be done because O'Grady was appearing and interacting with her on the magistrate's floor. On the 24th. So this is about conduct by O'Grady. Yes, Your Honor. And the interaction is the fact that he's walking by. Are these the funny looks and stuff? He's not just walking by, Your Honor. He knew and he testified that he was to have no involvement with her at all. And yet he chose intentionally to show up, to have interaction with her, requiring her to buzz him in to a door where he could have easily gone around the other way and not even appeared. The point is that he was there when he had no business being there. And he was there, one could draw a conclusion, the jury could, that he was there intentionally to intimidate my client. Now, she was intimidated and she did reach out to Shaw. And the very next day after this last email. I'm trying to make sure I'm getting the point. Sure. What I'm saying, Your Honor. Are you calling that an adverse action? What I'm suggesting, Your Honor, is this, that on the 24th, Shaw emailed my client and says, I don't know what he's doing. On the 24th, on the 25th, she was brought in by Shaw and told, we're going to give you a new start. We're going to get you away from Judge O'Grady. We're sending you down to probation. And oh, by the way, there's no position available for you here in the secretarial pool anymore, although there was. And that's been shown to be untrue. There's no position available in the secretarial pool and you're going down to probation, this new job to give you a new start, which of course turned out to be a gopher job that left her in a position where she ultimately was gone. Now, if we take that evidence of what was happening and we take the personnel action form that Judge O'Grady himself signed, authorizing this transfer, let me read. On the signing thing, did all the judges sign it? And do all the judges have to sign it? Or just help me with that point. I can help you with it. Let me just read to you briefly testimony that Judge O'Grady gave to me. I questioned him. Judge, did you understand that after Teresa Berry was removed from your supervision that you were to have no further involvement in decisions about her? His answer was yes. And you understood that if you were involved in the decisions about her, that could look bad, right? Answer, yes. That's something you would, you and the court wanted to avoid, correct? The appearance of having some kind of involvement in the decisions made about the future of this woman at the court. Answer, yes. And then throughout the course of this case, up until that moment in the testimony when I asked Judge O'Grady about this personnel action form, the position taken and the position that my colleague has said to you today is that Judge O'Grady had no involvement whatsoever in any decision after May the 7th. That's not true. Judge O'Grady testified. I signed off on the personnel form because they needed eight signatures for it to become official. He admitted that he was the one that made the signature on there to get the eighth name to make the transfer official, even though he claims, untruthfully, I think a jury can find, that he had no prior knowledge. And the reason he was untruthful in this is Abby Armitage testified there were two ways that these transfers were approved. One was a plenary meeting of the judges who made the decision and afterwards told her, take this personnel action form around or we'll sign it now or you can take it around to the judges. The second was the personnel committee. Interestingly enough, Judge O'Grady was on the personnel committee. They made the decision and then she did that. Judge O'Grady, the evidence confirms, was involved in that decision before he ever signed the form and he admits he made that official decision. And that, your honors, sets up the key evidence of retaliation on Judge O'Grady's part because not only did he sign that, but the evidence shows that the administration working with Judge O'Grady established this falsely, that there was nothing else that she could do except take this de facto demotion and go downhill as she continued to do. If there are no further questions, I would only say this, that it took 50 pages of argument for my opposition to suggest to this court that there's no dispute as to the material facts that their position is correct. I submit, your honors, that simply standing up here at this time and saying, we accept the plaintiff's allegations, is not in this record. So your preference is Johnson versus Jones? Your honor, I believe there is no jurisdiction at this point for this court to address the merits of this case because we have dueling sets of facts and Judge Sargis below did a superb job in making his basis of his opinion. I thank you very much for your time. Thank you. Thank you. I would like to call the court's attention as far as case law to the recent case Bradley versus Arwood, the affirmance by this court as to the argument on qualified immunity, pointing out, regardless of the district court's reasons for denying qualified immunity, we can exercise jurisdiction over the appeal and all the analysis in that case. I would also like to call the court's attention specifically to a recent decision, Phillips versus UAW, Sixth Circuit 2017 decision, setting out the, it was a Title VII case, not a 14th Amendment case, but it is relevant in terms of its holding that the standards the court applies for judging hostility are sufficiently demanding to ensure Title VII does not become a general civility code. So retaliation, I mean, it is, on that particular claim, and I know you didn't do much with this in your opening, but she gets a work improvement plan, which, you know, I can, first of all, that's an adverse employment action for sure and happens pretty soon after this. I didn't seem to be in any doubt of his involvement in it, and it's really a lot to take. He doesn't get a work improvement plan. I find it pretty outrageous, given what he had done and what they now knew had happened after the complaint, and the answer is the non-judge gets the work improvement plan. The judge isn't told, boy, these are serious allegations. This is a court, and, you know, we're not going to make any accusations here, but we're going to make sure we don't do this again. I'm going to try to cover everything you said, Your Honor. It wasn't that much, actually. Pardon? I didn't, it wasn't. Okay, well, I mean, just first, the response to Ms. Berry's complaint, by the way, she never complained until May 7, 2013. The court did not. Had she gotten a work improvement plan before that? No, no, no. Well, what she had before that was her performance review, Your Honor, which, as we explained, just very quickly, the court takes action upon her complaint, and pursuant to what they believe is the appropriate procedure, they refer it to the Ohio Disciplinary Council. They don't make a determination that what she is saying is true or not true. It is referred to the Disciplinary Council. Now, as far as Judge O'Grady, because his case is really all about Judge O'Grady, you can't impute what the court administration did or didn't do to Judge O'Grady when he had no role in that. What they did was, and we explain all this, plaintiff was working for both Judge Peoples and Judge O'Grady. In April of 2013, they issued her a performance review. It was the combined effort of both judges, as Judge Peoples testified to. Plaintiff disagreed with the review. Her disagreement itself certainly doesn't constitute evidence that it was unfair or, let alone, discriminatory. Nevertheless, sometime after that, she calls in and makes the complaint to the court administrator. As of that time, court administration doesn't consult with Judge O'Grady. Court administration decides they're separate her from Judge O'Grady while the investigation is pending. The evidence of court administration is not refuted. He was not involved in decisions as to her. Just from a timing, and this is really significant, she makes the complaint, but then they put her on paid administrative leave while they're trying to figure out where to assign her. She's on an extended, unrelated medical leave then because she has surgery. She doesn't get the work improvement plan until she returns from that leave. The work improvement plan pursuant to the court's policies, not O'Grady's, but the court's policies, work improvement plan is a natural follow-up to a review that contains some not meets designations in the various categories. In April, Judge Peoples and Judge O'Grady gave her, not all, but they gave her some categories of not meets. She hadn't made any complaint by that time. No First Amendment protected speech. The result of the performance review was that she was to get a work improvement plan. That was set in motion in April prior to any First Amendment speech on her part. Judge O'Grady and Judge Peoples don't follow up on it because she's removed from their chambers by separate decision, and there's testimony to this. Human and the personnel, head of the personnel committee, decide they're going to... One thing you said that made some sense. You're telling me the work improvement plan was started before May 7th? I'm saying what triggered the work improvement plan was the fact that she received a not meets, and pursuant to the court's policy... So that is helpful, and your red light has been on for five minutes approximately, so I think your time is up. Okay, thank you. But we thank you both for your argument, and the case will be submitted. Would the clerk call the next case, please?